| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF CHARLESTON ) | NINTH JUDICIAL DISTRICT |
| ) | |
| ) | CASE NO.: |
| ) | |
| THE MUHLER COMPANY, INC., ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | |
| ) | COMPLAINT |
| CI CAPITAL PARTNERS, LLC; PLY ) | (Jury Trial Demanded) |
| GEM PRIME HOLDINGS, INC., PLY ) | |
| GEM HOLDINGS, INC.; PLY GEM ) | |
| INDUSTRIES, INC.; AWC HOLDING ) | |
| COMPANY; ALENCO HOLDING ) | |
| CORPORATION; MWM HOLDING, ) | |
| INC. AND MW MANUFACTURERS, ) | |
| INC., ) | |
| ) | |
| DEFENDANTS. ) | |

Plaintiff The Muhler Company, Inc. ("Plaintiff"), complaining of the Defendants named herein, would respectfully allege and show the Court as follows:

## PARTIES AND JURISDICTIONAL STATEMENT

1. Plaintiff is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Charleston, South Carolina.

2. Defendant CI Capital Partners LLC ("CI Capital") is a corporation organized and existing under the laws of the State of Delaware with its headquarters in New York.

3. Defendant Ply Gem Prime Holdings, Inc. ("Ply Gem Prime") is a corporation organized and existing under the laws of the State of Delaware with its headquarters in Cary, North Carolina.


EXHIBIT A

4. Defendant Ply Gem Holdings, Inc. ("Ply Gem Holdings") is a corporation organized and existing under the laws of the State of Delaware with its headquarters and principal executive offices in Cary, North Carolina.

5. Defendant Ply Gem Industries, Inc. ("Ply Gem Industries") is a corporation, organized and existing under the laws of the State of Delaware with its headquarters and principal executive offices in Cary, North Carolina. Defendant Ply Gem Industries is a wholly owned subsidiary of Defendant Ply Gem Holdings, Inc.

6. Defendant AWC Holding Company ("AWC") is a corporation organized and existing under the laws of the State of Delaware. Defendant AWC is a wholly owned subsidiary of Defendant Ply Gem Holdings.

7. Defendant Alenco Holding Corporation ("Alenco") is a corporation organized and existing under the laws of the State of Delaware. Defendant Alenco is a wholly owned subsidiary of Defendant AWC.

8. Defendant MWM Holding, Inc. ("MWM") is a corporation organized and existing under the laws of the State of Delaware. Defendant MWM is a wholly owned subsidiary of Defendant Ply Gem Industries.

9. Defendant MW Manufacturers, Inc. ("MW") is a corporation organized and existing under the laws of the State of Delaware. Defendant MW is a wholly owned subsidiary of Defendant MWM.

10. Defendant Ply Gem Prime owns and/or controls the remaining Defendants (hereinafter referred to as "Defendants").

2

11. This Honorable Court has jurisdiction over all subject matter alleged herein and over all parties hereto and venue is proper in this forum.

## FACTUAL ALLEGATIONS

12. Plaintiff is in the business of supplying and installing new and replacement residential windows in United States, including South Carolina.

13. Defendants are leading manufacturers of residential exterior building products in North America, including new and replacement windows.

14. At all times relevant, Defendants engaged in the marketing, distribution, sale and delivery of residential new and replacement window products throughout much of the United States, including South Carolina.

### The Applicable Building Codes Require Windows Be Tested and Labeled In Accordance With AAMA 101

15. AAMA/WDMA/101/I.S.2/NAFS, AAMA/NWWDA/101/I.S.2, and/or AAMA/NWWDA/101/I.S.2/NAFS ("AAMA 101") is the test method and performance specification required for window products by the International Residential Code ("IRC").

16. Most jurisdictions in the United States, including South Carolina, have adopted the IRC as the applicable residential building code.

17. South Carolina has codified the 2000, 2003 and 2006 International Residential Code ("IRC"); the substance of each of these versions of the IRC is virtually the same for purposes of testing and labeling windows.

18. Defendants are bound to comply with the IRC by complying with AAMA 101, including its window testing and designation requirements (set forth more fully below), due to the reference of AAMA 101.

3

19. The IRC requires that windows be designated by their performance characteristics, including its performance grade rating under AAMA 101.

20. The AAMA 101 performance grade rating is determined by a group of three tests to measure a window's ability to withstand water infiltration, air infiltration, and wind loads.

21. AAMA 101 also refers to the performance grade rating as the design pressure ("DP") rating.

22. A higher performance grade rating indicates a higher resistance of that window to air, water and wind penetration during weather events such as tropical storms and hurricanes.

23. The IRC imposes higher performance grade ratings for windows installed in coastal regions due to the severe weather and climate conditions common along the coast, especially regarding excessive moisture and wind.

24. Specifically, the window performance section of the 2006 IRC, Section R613.3, references Tables R301.2(2) and R301.2(3), which specify the minimum design pressures that windows must meet to be used in structures in various regions, including coastal areas.

25. The testing and labeling section of the 2006 IRC, Section R613.4, then provides how windows and portions of buildings are to comply with the minimum wind load design pressure in Tables R301.2(2) and R301.2(3).

26. IRC Section R613.4 provides that windows must be tested *and* labeled by a third party certification agency to demonstrate compliance with AAMA 101.

27. A third party certification label *must* be affixed to a window, identifying the window's approved inspection agency and performance characteristics:

> R613.4 Testing and labeling. Exterior windows and sliding doors *shall be tested by an approved independent laboratory, and bear a label identifying*

4

*manufacturer, performance characteristics and approved inspection agency to indicate compliance with AAMA/WDMA/CSA 101/I.S.2/A440* [] (emphasis added).

28. Under the third party certification (or "inspection") required by IRC R613.4, the third party agencies review independent test reports provided by manufacturers for each of their window products and, where warranted, issue certifications to manufacturers that list the actual performance grade that a window tested to under AAMA 101.

29. The third party agencies also then issue permanent certification (aka "gold") labels to manufacturers for placement in each window frame that should indicate the performance grade rating of that window as stated on the corresponding certification.

30. The IRC (in its enforcement of AAMA 101) does not allow window manufacturers to separately label a window with a structural rating alone.

31. AAMA 101 instead allows manufacturers to list a higher negative structural rating in addition to (not in lieu of) the three part AAMA 101three-part testing.

### The Public Relies on Window Labels To Provide Accurate Performance Grade Ratings Per AAMA 101 Testing As Required Under the IRC

32. Manufacturers, including Defendants, apply two types of labels on their windows, permanent "certification" (aka "gold") labels and temporary "manufacturer" labels.

33. The certification labels are affixed by manufacturers to the interior frame of a window are an indication of product quality and characteristics to builders, dealers, and building and home owners.

34. The manufacturer labels are affixed by manufacturers to the glass of a window and are and should be an indication of product quality to builders, dealers, and building and home owners.

5

35. Manufacturers, including defendants, place their labels with the intent that Consumers, installation specialists and building code inspectors rely on the conspicuously placed manufacturer label on the glass of a window to determine the performance grade rating of the window, whereas the certification label is discretely located within the frame of the window and difficult to read.

36. Due to their placement location, manufacturer labels are more conspicuous than the less visible certification labels.

37. The certification labels and manufacturer labels affixed to the windows by Defendants should equally assure a customer that:

   a. An identical window sample passed the required performance tests under AAMA 101 for resistance to air leakage, water penetration and wind pressure;

   b. Performance tests were conducted on the sample window in the presence of an independent accredited lab technician;

   c. The manufacturer has certified that the production line windows are built to the same specifications as the sample window tested; and

   d. The performance grade rating listed will provide the durability indicated by the AAMA 101 testing for air leakage, water penetration and wind pressure.

38. Installing windows with the proper performance grade rating for a specific region is a vital safety issue for the public.

39. Following one or more high wind/rain storm or similar events, the buying public will risk window failure with the purchase of windows that fail to meet the *complete* three part testing under AAMA 101 and the IRC.

40. Window failure may include water penetration and leakage into residential wood frame substrates, eventual rot and deterioration of the wood substructure, possible mold growth and eventual lack of structural capacity for the windows to be anchored into the wood frame walls of a residence.

### Defendants Manufacture, Label and Sell "Uprated" and "Illegal" Windows

41. Defendants' windows are categorized into series, including Premium, Pro, and Builder/Contractor Series.

42. Defendants' window series are offered in various styles, including single hung, double hung, casement, fixed, mulled, EZ tilt, awning, direct set and special shape windows, and are made of wood, wood composite, vinyl, vinyl clad, aluminum and aluminum clad.

43. Defendants' advertise "standard features" for these various series, including allegedly certified performance grade ("DP") ratings.

44. Specifically, on their website, Defendants advertise that various styles of the Premium Series, Pro Series and Builder Series have a "DP50" as part of their "standard features."

45. In addition to their website, Defendants advertise their series' performance grade ratings on sales documents distributed by their sales representatives (including performance packs, product summaries and sales sheets) and ultimately on their manufacturer and certification labels and packaging (as well as on some product invoices).

46. Defendants have marketed and sold certain windows by utilizing false and misleading descriptions and representations of fact regarding performance characteristics, resulting in Defendants selling "uprated" products (i.e., products that set forth higher

7

performance grade ratings than were actually earned in certified third party AAMA 101 compliant testing); for example, substituting an ASTM E-330 structural testing requirement for the three-part AAMA 101 performance grade testing requirement (which is comprised of the ASTM E-331 water penetration testing, ASTM E-283 air leakage testing *as well as* the ASTM E-330 structural testing).

47.     Defendants also have marketed and sold certain windows by utilizing false and misleading descriptions and representations of fact regarding performance characteristics, resulting in Defendants selling "illegal" products (i.e., products that fail to list *any* performance grade rating on the IRC-required third party certification labels).

48.     Upon information and belief, for most or all styles of the following "uprated" windows, Defendants have listed an accurate performance grade rating (supported by the three-part AAMA 101 testing) on the windows' certification labels but have listed a *higher*, inaccurate performance grade rating (supported by only structural testing) on other advertisements, most obviously their manufacturer labels:

    a. Builder 1100 (also rebranded as Lowe's 2600) (vinyl);

    b. MW Pro Classic (also rebranded as Builder 2000/3000) (vinyl);

    c. Premium Mira (aluminum clad);

    d. Builder 1000 (also rebranded as 1700/1900) (vinyl);

    e. Builder 100, 3700, 4700, 4800 and 5000;

    f. Twinseal;

    g. MW Pro 200, 300, 400 (wood composite); and

    h. Such other window series as may be proved in discovery or at trial.

49. Upon information and belief, for most or all styles of the following "illegal" windows, Defendants have listed *no* performance grade rating on the "certification"[1] labels (which is, on its face, a violation of the IRC) but have listed a performance grade rating higher than the rating from the three-part AAMA 101 testing (supported by only structural testing) on other advertisements, most obviously their manufacturer labels:

    i. Builder Series 600 (vinyl clad);

    j. MW Pro Series 800 (vinyl clad);

    k. Builder Series 1000 (vinyl); and

    l. Such other window series as may be proved in discovery or at trial.

50. Both the "uprated" and "illegal" windows are the subject of this suit (the "Windows").

51. Certain series of Defendants' windows are potentially both "uprated" and "illegal."

52. For certain "uprated" and/or "illegal" windows, Defendants have claimed third party certifications for certain years while not having proof of any certification for other years,[2] which still amounts to continuously deceptive advertising practices by the Defendants.

53. Defendants employ their scheme of deceptive advertising, marketing, and sales in order to increase their market share at the expense of the Plaintiff.

---

[1] The very presence of NAMI certification labels affixed to these windows implies certification occurred when, in fact, the Defendants' failure to list a performance grade rating on these labels reflects that there is *no* certifying agency for these windows.

[2] Post-suit certifications produced by Defendants allege to make the Series 600 and 800 windows "legal." However, no evidence has been produced to confirm the configurations sold in the United States are the same as those tested.

9

### Defendants' sale of "Uprated" and "Illegal" Windows Constitute Unfair and Deceptive Practices

54. Defendants have willfully engaged in deceptive practices in their conduct of trade and commerce that amount to violations of common law unfair competition and the South Carolina Unfair Trade Practice Act, S.C. Code Ann. § 39-5-10 et. seq. (1976).

55. Defendants have sold the windows in the United States and South Carolina with literal and implicit representations that the products were suitable for use.

56. However, the windows were not tested and labeled in compliance with the governing national and state standards – the IRC.

57. The inclusion of *any* performance characteristic in the marketing and sale of windows is an express and implicit representation that the performance characteristic is proper and accurate, making the "uprated" windows misleading and deceptive and the "illegal" windows false, misleading, and deceptive as they convey performance grade ratings placed by Defendants not in compliance with the IRC.

58. Defendants intend to give themselves an unfair competitive advantage with their misleading advertisements of these "uprated" and "illegal" products.

59. This actions have been undertaken by Defendant intentionally and with the express intent to deceive.

60. The Plaintiff, as a competitor in the United States for the sale of new and replacement windows, has been damaged by the Defendants' false advertising practices and Defedants' unfair and deceptive trade practices.

### Defendants' Practice of Falsely labeling and Falsely Advertising
### Their Windows Is Misleading To Consumers

61. Defendants have made and continue to make representations to consumers on their website, performance packs, sales sheets, labels, packaging and invoices and through its sales people and agent representatives that the windows had/have higher performance grade ratings than they have achieved.

62. The Defendants' practice of false advertising, including its practice of affixing manufacturer labels on the glass of each window at issue, provides the public with a performance grade rating unsupported by certifications.

63. Defendants' intentional mislabeling of the windows has successfully and repeatedly deceived developers, homeowners, governmental and municipal users, contractors, subcontractors, building inspectors and insurance companies, among others, into believing that Defendants' Windows have a higher performance rating than they do.

64. Defendants' false advertising of the windows' performance ratings – a key characteristic of the windows – is done to sway the public to buy their windows, increasemarket share, and is inherently misleading to consumers.

### FOR A FIRST CAUSE OF ACTION
### (Violation of the South Carolina Unfair Trade
### Practices Act, S.C. Code Ann. §39-5-10, et seq.)

65. Plaintiff repeats and realleges all the allegations contained in the foregoing paragraphs as though the same were fully set forth herein verbatim.

66. As described herein, Defendants have used false or misleading descriptions of facts and/or false or misleading representations of fact in commerce to describe the performance

11

ratings of its windows and such other and further false or misleading representations or descriptions as may be shown through discovery and during the trial of this matter.

67. These false and misleading descriptions and representations as described herein are likely to and have caused confusion, or mistake, or deceived consumers as to the quality and certification of Defendants' windows.

68. These false and misleading descriptions and representations by Defendants as described herein in commercial advertising and/or promotion of their products, misrepresents the nature, characteristics, and qualities of Defendants' windows.

69. These false and misleading descriptions and representations by Defendants as described herein in commercial advertising and/or promotion of their products, misrepresents the nature, characteristics, and qualities of Defendants' windows and constitutes unfair and deceptive acts in the conduct of trade or commerce.

70. Plaintiff has been damaged by such false and misleading descriptions, false and misleading actions, and false and misleading representations by Defendants.

71. Defendants' acts, as alleged above, constitute unfair competition with Plaintiff in violation of the South Carolina Unfair Trade Practices Act, §39-5-10, et seq.

72. Pursuant to the South Carolina Unfair Trade Practices Act, §39-5-10, et seq., Plaintiff is entitled to damages for Defendants' unfair competition, an accounting of profits made by Defendants on sales of their windows in the United States and recovery of Plaintiff's costs of this action.

73. Defendants' unfair competition with Plaintiff has been willful and wanton for the purpose of deceiving customers and injuring the reputation and goodwill of the Plaintiff.

74. Through their conduct, as set forth herein, Defendants have willfully engaged in unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade and commerce, in violation of S.C. Code Ann. §39-5-10, et seq.

75. Defendants conduct and practices are capable of repetition, adversely affect the public interest, and have caused Plaintiff to suffer an ascertainable loss of money or property entitling it to the relief permitted by S.C. Code Ann. §39-5-140.

76. As a direct and proximate result of Defendants' misconduct and mislabeling scheme, as alleged above, the Plaintiff and public have been misled and damaged.

77. As a direct and proximate result of Defendants' misconduct, as alleged herein, Plaintiff has suffered and continues to suffer actual, special and consequential damages including but not limited to loss of sales and loss of profits and other damages pursuant to S.C. Code Ann. §35-5-140.

78. In addition, on account of Defendants willful and knowing use and employment of unfair or deceptive methods, acts and practices as described herein Plaintiff is entitled to a trebling of any damage award pursuant to S.C. Code Ann. §35-5-140.

### FOR A SECOND CAUSE OF ACTION
### (Common Law Unfair Competition)

79. Plaintiff repeats and realleges all the allegations contained in the foregoing paragraphs as though the same were fully set forth herein verbatim.

80. This claim arises out of the same facts as the above claim based on the South Carolina Unfair Trade Practices Act and is substantially related thereto.

81. Defendants' acts of unfair competition entitle Plaintiff to recover damages under the common law of the State of South Carolina.

82.   Defendants' acts of unfair competition have been malicious and calculated to injure Plaintiff.

83.   The willful, wanton and malicious nature of Defendants conduct has damaged the Plaintiff and entitles Plaintiff to an award of its reasonable attorneys' fees and punitive damages against Defendants.

## FOR A THIRD CAUSE OF ACTION
### (Injunctive Relief As to Defendant's Common Law Unfair Competition)

83.   Plaintiff repeats and realleges all the allegations contained in the foregoing paragraphs as though the same were fully set forth herein verbatim.

84.   Defendants' acts, as alleged above, constitute unlawful and unfair competition with Plaintiff in its business endeavors.

85.   According to the principles of equity and in order to prevent the Defendants' further unlawful, deceptive, and unfair business practices, Plaintiff seeks an injunction preventing Defendants from engaging in the unfair competition and misleading acts as outlined herein.

WHEREFORE, Plaintiff prays for judgment on all causes of action against the Defendants jointly and severally in an amount to be determined by the jury, together with consequential damages, punitive damages, trebled damages, costs of this action, attorneys' fees and such other and further relief that this Honorable Court deems just and proper.

By: _/s/_

YOUNG CLEMENT RIVERS, LLP
D. Jay Davis, Jr.
Edward D. Buckley, Jr.
Christine Kent Toporek
Young Clement Rivers, LLP
P.O. Box 993, 25 Calhoun Street, Suite 400
Charleston, South Carolina 29402-0993
Telephone: (843) 720-5406
Fax: (843) 579-2946

And

JUSTIN O'TOOLE LUCEY, P.A.
Justin Lucey (Fed. ID No. 5613)
Stephanie D. Drawdy (Fed. ID No. 9996)
415 Mill Street
Post Office Box 806
Mount Pleasant, SC 29465
(843) 849-8400
**Attorneys for Plaintiff**

May 8, 2013
Charleston, South Carolina

CERTIFICATE OF MAILING

I hereby certify that a copy of the foregoing pleading was mailed to all counsel of record in this proceeding this ___ day of May, 2013.

15